1

```
 1                IN THE UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2
   UNITED STATES OF AMERICA           )Bay City, Michigan
 3                                    )May  24, 2018
        vs.                           )12:10 p.m.
 4                                    )
   CORNELIUS MAYFIELD,                 )
 5                                    )Case No. 17-20591
        Defendant.                    )
 6  _____  )

 7
                       TRANSCRIPT OF SENTENCING
 8           BEFORE THE HONORABLE THOMAS L. LUDINGTON
                    UNITED STATES DISTRICT JUDGE
 9
   APPEARANCES:
10
   For the Government:   TIMOTHY M. TURKELSON
11                       United States Attorney
                         Eastern District of Michigan
12                       101 First Street
                         Suite 200
13                       Bay City, MI 48708

14 For the Defendant:    JOAN MORGAN
                         Federal Defender Office
15                       653 S. Saginaw; Suite 105
                         Flint, MI  48502
16                       (810) 232-3600

17

18

19

20

21 Court Reporter:       Carol M. Harrison, RMR, FCRR
                         1000 Washington Avenue
22                       Bay City, MI  48708

23

24            Proceedings reported by stenotype reporter.
             Transcript produced by Computer-Aided Transcription.
25
```

US v. Mayfield - Sentencing - May 24, 2018

1                    P R O C E E D I N G S

2              (At 12:10 p.m., proceedings commenced.)

3              (Defendant present.)

4              THE CLERK:  United States of America versus Cornelius

5    Mayfield, Case No. 17-20591-1.

6              THE COURT:  Good afternoon, counsel.  If we could

7    have your introductions, please.

8              MR. TURKELSON:  Good afternoon, Your Honor.  May it

9    please the Court, Tim Turkelson on behalf of the United States.

10             THE COURT:  Sir.

11             MS. MORGAN:  And I'm Joan Morgan.  I'm here for

12   Mr. Mayfield, who's next to me.

13             THE COURT:  Good afternoon, Ms. Morgan, and good

14   afternoon, Mr. Mayfield.

15             MS. MORGAN:  Good afternoon.

16             THE DEFENDANT:  Good afternoon.

17             THE COURT:  We are assembled for Mr. Mayfield's

18   sentencing hearing.  The Court's records reflect the fact that

19   he had entered a guilty plea on February the 8th of this year,

20   later accepted on report and recommendation.

21             He entered his plea to Count One of the indictment

22   charging him with the offense of conspiracy to possess with the

23   intent to distribute and to distribute heroin.  It's a Class C

24   felony offense under federal law.  He actually entered his plea

25   without the specific benefit of a Rule 11 agreement.

1        The offense is punishable by a term of not greater

2   than 20 years in custody.  The Court is obligated to impose a

3   term of no less than three years of supervised release

4   following the term of custody and up to lifetime supervised

5   release, also authorized by statute to impose a fine of up to

6   $1 million at the time of sentencing.

7        After Mr. Mayfield entered his plea, he was

8   interviewed by Probation Officer Burns who, in turn, prepared a

9   presentence investigation report that was later circulated for

10  review in March.

11       Ms. Morgan, I understand that you have had a chance

12  to read the report and to go over it with Mr. Mayfield?

13       MS. MORGAN:  That's true.  We don't have any

14  objections other than the one that I filed, but I think it's

15  been resolved.

16       THE COURT:  That was the longest objection that I

17  think I've ever read.

18       MS. MORGAN:  It was probably the longest one I've

19  ever written, but --

20       THE COURT:  It was also very persuasive.  You have

21  convinced Mr. Turkelson that you are spot on, and it has a

22  dramatic implication for Mr. Mayfield.  I hope you understand

23  how valuable her assistance has been, sir.

24       THE DEFENDANT:  Yes, I do.

25       THE COURT:  The record will reflect the fact that the

US v. Mayfield - Sentencing - May 24, 2018

1  report includes a base offense level of 18.  Mr. Mayfield was

2  accorded the three-level reduction for his acceptance of

3  responsibility.  The total base offense level then becomes 15.

4  There is one change that is to be noted that doesn't impact the

5  guideline range, but he ends up with a total of 12 criminal

6  history points, if you do the addition accurately, placing him

7  in Category V.  The resulting advisory guideline is 37 to 46.

8  May I assume that you do not disagree with that calculation,

9  Ms. Morgan?

10          MS. MORGAN:  Judge, I'm sure your math is better than

11  mine and so I don't.

12          THE COURT:  Mr. Turkelson, are you satisfied with the

13  report itself as well as the guideline assessment?

14          MR. TURKELSON:  I am, Your Honor.  Thank you.

15          THE COURT:  We would entertain any remarks you'd like

16  to make on Mr. Mayfield's behalf.

17          MS. MORGAN:  So, Your Honor, most of my allocution

18  has actually been taken away by Mr. Turkelson's concession, but

19  I still have a couple things I would like to say.  Mr. Mayfield

20  was on state parole when he committed this offense --

21          THE COURT:  Yes.

22          MS. MORGAN:  -- and because of that, he's got a state

23  parole violation pending, and that has a couple of implications

24  which I'd like to bring to Your Honor's attention.  The first

25  one is that, of course, he will not be getting credit on this

1  sentence for any time up until today, because that will be

2  credited towards his state parole violation sentence.

3          I would ask you -- and I know we've had this

4  discussion in other cases, and you may not be willing to do so,

5  but I would ask you to make this sentence concurrent with any

6  sentence that the parole board imposes, because he still needs

7  to face his parole violation sentence.

8          I would also ask that you consider a sentence at the

9  bottom of the new guidelines range.  I say that because, of

10 course, what's going to happen with Mr. Mayfield is that, I

11 believe, he's going to have to do additional time.  At this

12 point in time, we have no idea what that's going to be.  The

13 parole board doesn't let us know what that will be, but he will

14 be -- whatever sentence you impose, he's going to do more than

15 that because of the parole violation.

16          The final request that I have is that you recommend

17 that he be designated to Milan so that he can be close to his

18 family and, finally, that you also recommend that he engage in

19 the residential drug abuse program.  This offense is a result

20 of his own drug addiction and his involvement in selling drugs

21 in order to maintain his own habit.

22          He indicates, and the presentence report supports,

23 that his last conviction, the one that he committed while he

24 was incarcerated, was also as a result of his drug addiction,

25 because he was trying to hide drugs from a corrections officer

1    in state prison, and when the corrections offer confronted him,

2    he responded.

3           So he clearly acknowledges that he has a drug

4    addiction.  He has been taking steps, and he'd like to

5    allocute, to address that, but I still think that there is no

6    reason why substance abuse treatment would be anything except

7    beneficial to him, so I'd ask that you recommend that as well.

8    Thank you.

9           THE COURT:  He's been pending -- he was arrested, as

10   I recall, in August of last year?

11          MS. MORGAN:  Correct.

12          THE COURT:  With no process other than the initiation

13   of the parole violation.

14          MS. MORGAN:  Yes, that's what I understand as well.

15          THE COURT:  And we've gone over this subject at least

16   on one other occasion --

17          MS. MORGAN:  Yes.

18          THE COURT:  -- that I can recall, in perhaps the last

19   six weeks, with defendants in similar circumstances where the

20   state court would, at least on the violation, be the second

21   sentencing.  On the other hand, by state law, even though it

22   would be the second sentence, I believe the violation would be,

23   by state law, necessarily concurrent?

24          MS. MORGAN:  So if I can, I have two things to say in

25   response to that.  The first is that the *Setser*, S-E-T-S-E-R,

1  decision from the United States Supreme Court allows this Court

2  to indicate that this sentence is concurrent with an un-yet

3  imposed sentence.

4          And the other response I have is that absolutely if

5  Mr. Mayfield were being sentenced in state court, that sentence

6  would be presumptively concurrent with this one, but it won't

7  be a state court sentence that he'll be undergoing with the

8  parole board.  It would be a parole board sentence, and I'm not

9  sure that they follow that same law.  I don't think they're

10  required to, and so that's another reason why I -- I completely

11  agree with you that normally the state sentence would be

12  presumptively concurrent, and so this is kind of a redundant

13  request, but I'm not sure the parole board necessarily follows

14  that, and *Setser* does allow this Court to indicate concurrence,

15  so that's my response.

16          THE COURT:  The other aspect of it that has an impact

17  certainly for Mr. Mayfield is the fact that he will never

18  receive credit for that time period --

19          MS. MORGAN:  Right.

20          THE COURT:  -- between August of last year and

21  today's date --

22          MS. MORGAN:  Right.

23          THE COURT:  -- against the federal sentence.

24          MS. MORGAN:  Yes.  And I thought I had mentioned that

25  previously, but that -- I was kind of arguing that that was a

1  reason to request that the Court consider imposing a sentence

2  at the bottom of the guidelines, but you are absolutely

3  correct.  He won't get credit from the Bureau of Prisons for

4  the nine months or so that he's already served.

5            THE COURT:  Yes.  I appreciate your remarks.

6            MS. MORGAN:  Thank you.

7            THE COURT:  Thank you very much.

8            Mr. Mayfield, anything that you would add to the

9  remarks that Ms. Morgan has made on your behalf?

10            MS. MORGAN:  Judge, can he sit down or do you want

11  him at the podium?

12            THE COURT:  My preference would be at the podium.

13            THE DEFENDANT:  Thanks.  Appreciate it.  I come to

14  you humbly and respectfully.  I got this letter I wrote.  When

15  I was released from prison three years ago, I worked

16  consistently until I was laid off from Sears in 2017.  I went

17  back to using heroin, and to supply my habit, I sold drugs.

18            I have been trying to find ways to control my

19  addiction.  I was living with my mother who was -- who has

20  health problems and recently had her foot amputated.  I hope to

21  be able to return to her and help her when I'm released.

22            I know how to work hard.  I have a loving family and

23  a supportive girlfriend to return to.  I will do everything I

24  can to stay drug free.  Thank you.

25            THE COURT:  You had a stroke in 2015.  What -- can

1  you tell us what you know about the circumstances of that

2  medical condition?

3          THE DEFENDANT:  It was stress and not eating right.

4          THE COURT:  Okay.  How did you learn that?

5          THE DEFENDANT:  High blood pressure, through medical.

6          THE COURT:  Okay.  Have you had any continuing either

7  stress-related problems or additional medical care?

8          THE DEFENDANT:  Yes.  I just started taking my blood

9  pressure pills.  My left side of my face --

10          THE COURT:  Yes.

11          THE DEFENDANT:  -- like it's a twitch.  Like if I

12  take my glasses off, you probably be able to see it.  I can't

13  get a full smile neither.

14          THE COURT:  How is it that you ended up connected

15  with Mr. Forte?

16          THE DEFENDANT:  Family member.

17          THE COURT:  Family member.  Was he working for you?

18          THE DEFENDANT:  No.

19          THE COURT:  How did it happen that he did the

20  delivery on a transaction you arranged?

21          THE DEFENDANT:  I just knew that he had it.  I was

22  just trying to support my habit.

23          THE COURT:  Well, you were placing him at risk and

24  responsibility for the transaction, even though you were the

25  one profiting from it?

1          THE DEFENDANT:  Yes, I did.

2          THE COURT:  I appreciate your remarks.  Thank you.

3          THE DEFENDANT:  Thank you.

4          THE COURT:  Mr. Turkelson, any remarks on behalf of

5     the Government?

6          MR. TURKELSON:  Your Honor, we have no objection to

7     the request to designate the defendant to Milan and to

8     recommend rehabilitation services for him while he's

9     incarcerated.  I would submit to the Court that he has got one

10    heck of a break, so to speak, based on Ms. Morgan's diligence,

11    to her credit.  But I think it also reflects the fact that he

12    was so close to a sentence of 151 to 188 months, based on his

13    history, and based on the conduct that he's engaged in in the

14    past.

15         And even with that -- those experiences under his

16    belt, even being in prison, and being caught in prison with

17    heroin, and fighting with a prison guard, we find him here

18    today selling drugs, and I think it's an individual who hasn't

19    necessarily learned his lesson.  I hope that what he said to

20    Your Honor is sincere and that he follows through, and I wish

21    him luck in that.

22         That being said, it does not change the fact that

23    even with all of this -- these warnings, so to speak, in the

24    past, he still engages in this behavior, and as the Court

25    astutely noted, brings in a family member and subjects that

1   family member to prison based on his behavior and his desires

2   for controlled substances.

3           Based on that, Your Honor, I would submit to the

4   Court a sentence above the minimum guidelines would be

5   appropriate; how far above, I'll certainly leave that within

6   the judge's -- Your Honor's discretion, but I think above the

7   guidelines would be appropriate in these circumstances.  Thank

8   you.

9           THE COURT:  Thank you.  We noted earlier the fact

10  that you're 32 now, sir; not 22.  You've had a lot of

11  experience in custody, and despite that fact, you remain

12  actually a very lucky man here today.

13          As Mr. Turkelson has pointed out, your classification

14  as a career offender would have elevated your sentence almost

15  by a factor of four; and, as he says, you're that close to that

16  kind of sentence, certainly upon your return.

17          You're lucky in one other sense, and that is that you

18  still have the support of your family and of your girlfriend,

19  and I hope you consider -- that you consider that fact in the

20  way in which you choose to behave in the future in order to

21  return the consideration that they have continued to invest in

22  you.

23          We have reviewed the Sentencing Reform Act and its

24  implications to the advisory guideline range.  I've sought to

25  very briefly highlight a number of the additional factors that

1    are impactful from the standpoint of the Court's assessment of

2    the 3553(a) factors.

3            Accordingly, the gentleman is to be sentenced to the

4    United States Bureau of Prisons for a term of 40 months.  It is

5    also our recommendation that he be designated to an institution

6    that implements a comprehensive drug treatment program.  We

7    will also recommend to the Bureau of Prisons that the gentleman

8    be placed at the Milan facility so that he remains available

9    for visitation with his family.

10           Upon his release from custody, he's to be placed on

11   supervised release for a term of three years.  He is to pay the

12   statutory assessment of $100.  We will waive the imposition of

13   a fine, costs of incarceration and costs of supervision.  The

14   gentleman does not have the resources to reimburse the

15   Government for the associated expenses.

16           Drug testing is ordered.  While he is on supervision,

17   he is to respect the standard conditions of supervised release

18   that have been adopted by the United States District Court for

19   the Eastern District of Michigan.  He's also to comply with the

20   following additional special conditions:

21           He is to participate in a program approved by the

22   probation department for substance abuse, which may include

23   testing to determine if he's reverted to the use of drugs or

24   alcohol, if his probation officer considers that necessary.

25           He is not to use or possess alcohol in any consumable

1    form nor is he to be in the social company of any person that

2    he knows to be in possession of alcohol or illegal drugs or

3    frequent any establishment where alcohol is served for

4    consumption on the premises, with the exception of restaurants.

5              Finally, he is to submit his person, residence,

6    office, vehicle, papers, business or place of employment or any

7    property under his control to a search.  The search will -- is

8    to be conducted by a United States probation officer at a

9    reasonable time and reasonable manner, based upon either a

10   reasonable suspicion that he is in possession of contraband or

11   an independent belief that there's been a violation of a

12   condition of his release.

13             His failure to submit to the search will constitute

14   an independent basis for revocation of his terms of supervised

15   release.  He's also to let anyone know who he's residing with

16   that he is amenable to a search under those conditions.

17             Ms. Morgan, any questions concerning the terms of the

18   sentence or objections that we've not given attention to?

19             MS. MORGAN:  My only question would be whether or not

20   the Court has considered indicating that this sentence is

21   concurrent with the parole violation sentence?

22             THE COURT:  In consideration of the credit

23   application, I think that's appropriate.  We will reflect our

24   recommendation of a concurrent sentence.

25             MS. MORGAN:  Thank you.  Thanks.

1          THE COURT:  Mr. Turkelson, any questions from the

2    Government's perspective?

3          MR. TURKELSON:  Nothing, Your Honor.  Thank you.

4          THE COURT:  One remaining matter that we should

5    review is the fact that because there is no Rule 11 agreement,

6    there is also no appeal waiver.  So, sir, if you'd like the

7    Court of Appeals to review the decisions that we've made, you

8    may do so.  In order for that, however, to be begun in a timely

9    manner, if would be necessary for the claim of appeal to be

10   filed with the Court, and with the clerk's office, within 14

11   days of today's date.  Do you understand that?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Ms. Morgan, have you had a chance to talk

14   to the gentleman about the subject?

15         MS. MORGAN:  I have, thank you.

16         THE COURT:  Good.  Any additional business?

17         MS. MORGAN:  No, thank you.

18         MR. TURKELSON:  Nothing, Your Honor.

19         THE COURT:  We do actually have one remaining matter.

20         MS. MORGAN:  Not on this case, but I do -- I would

21   like to address the Court on the Hensley case.

22         THE COURT:  Well, actually, there is one additional

23   matter related to this case --

24         MS. MORGAN:  Thank you.

25         THE COURT:  -- or at least to this gentleman, and he

US v. Mayfield - Sentencing - May 24, 2018

1  had made a request by correspondence, which I'm more than

2  willing to follow up on once you're on supervised release.  Do

3  you know what that is?  My understanding is that you would like

4  to get married?

5            THE DEFENDANT:  Yes.

6            THE COURT:  If you successfully return on supervised

7  release, you can be married here.

8            THE DEFENDANT:  Thank you.  Appreciate that.

9            THE COURT:  Good luck.  Record's closed.

10           (At 12:31 p.m., court recessed.)

11

12

13

14

15                         *  *  *  *  *

16                    C E R T I F I C A T E

17     I certify that the foregoing is a correct transcript
        from the proceedings in the above-entitled matter.

18

19                         _Carol M. Harrison_

20  Date: 8-27-2019        Carol M. Harrison, RMR, FCRR
                           Official Court Reporter
21                         United States District Court
                           Eastern District of Michigan
22                         1000 Washington Avenue
                           Bay City, MI  48708
23

24

25

                US v. Mayfield - Sentencing - May 24, 2018